**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**JO SPENCE,**

   **Plaintiff,**

      v.                                    Civil Action No. 19-1947 (JEB)

**UNITED STATES DEPARTMENT OF**
**VETERANS AFFAIRS,** *et al.*,

   **Defendants.**

## MEMORANDUM OPINION

Plaintiff Jo Spence, a Black woman over the age of 40, believes that her former

employer, the Department of Veterans Affairs, discriminated against her based on her race, sex,

and age, and then ultimately fired her in retaliation for whistleblowing activity. She thus brought

this *pro se* suit under the Whistleblower Protection Act, Title VII of the Civil Rights Act, the

Age Discrimination in Employment Act, the Civil Service Reform Act, and the Department of

Veterans Affairs Whistleblower Protection Act.

Although she is herself a lawyer, she has constantly violated this Court's directives on

how to frame her Complaint; in fact, Spence's operative Second Amended Complaint represents

her fifth attempt to bring these claims against the VA. On multiple occasions, this Court has

rejected her proposed Complaints for circumventing the required page limits, but it has each time

given her another chance to amend, rather than dismissing the case with prejudice for failure to

comply with the Court's orders. The last time around, Plaintiff was warned that this would be

her final opportunity to abide by these restrictions and to cure her prolixity and confusing

allegations. On her most recent try, she finally filed a Complaint that complies with the Court's

1

page limits.

Defendants VA and Secretary Denis McDonough, whom the Court will jointly refer to as the VA, nonetheless now move for dismissal or summary judgment, contending that her latest effort fails to state a claim upon which relief can be granted. Because Plaintiff's allegations remain facially deficient, the Court will grant the Motion, putting an end to her efforts.

## I.   Background

### A.   Factual Background

The Court, as it must at this stage, draws the facts from the Second Amended Complaint, presuming them to be true. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). As additional facts relevant to Spence's specific claims are discussed later in the Opinion, the Court provides here only an overview of her employment with the VA.

Plaintiff has been an attorney for over 36 years. See ECF No. 36 (Sec. Am. Compl.), ¶ 4. Although the Complaint is unclear on the specifics of her tenure as an attorney at the VA, Spence most recently worked as a senior attorney for the Office of the General Counsel (OGC), Procurement Law Group (PLG) between 2007 and 2018. Id., ¶ 7. She identifies herself as a Black female over the age of 40. Id., ¶ 11.

According to her, trouble began when, in November 2017, she filed a complaint against the agency alleging discrimination on the basis of her race, sex, and age. Id., ¶¶ 10–11. Around the same time, on some unspecified dates in 2017 and 2018, Spence also filed a series of whistleblower disclosures with the VA OGC, Inspector General, and Office of Special Counsel. Id., ¶ 10. Her grievances covered a broad range of topics, including accusing the agency of creating a hostile work environment in retaliation for her equal-employment-opportunity complaints, id., ¶¶ 11, 34, inappropriately hiring additional personnel for the PLG office at a

higher salary level, id., ¶ 30, and granting unlawful preference to those applicants for employment.  Id., ¶ 39.

Spence contends that, as a result of these disclosures and because of her membership in protected classes, she became the subject of a campaign of discrimination and retaliation.  Id., ¶¶ 10–27.  She also developed an acrimonious relationship with her direct supervisors.  During the year prior to her removal, she sparred with them via email about her performance on work assignments, e.g., id., ¶¶ 34, 49–51, 54, 57, 59, the office's decision to hire new attorneys, id., ¶ 67, and the belated approval of her leave request.  Id., ¶¶ 16, 80.  Spence was also issued a series of counseling and admonishment letters, denied a transfer of office, and suspended for three days in the summer of 2018.  Id., ¶¶ 13–27, 31.  Shortly thereafter, her supervisors proposed her removal.  Id., ¶¶ 7, 26.  The VA ultimately adopted the proposal and fired Spence in October 2018.  Id., ¶ 27.

B.  Procedural History

Plaintiff responded by challenging her termination before the Merit Systems Protection Board, an independent agency charged with adjudicating conflicts between federal workers and their employing agencies, which denied her appeal in a decision that became final on May 31, 2019.  Id., ¶ 8.  She then filed this suit, alleging in a capacious 98-page Complaint that the VA had unlawfully discriminated against her based on race, sex, and age in violation of the WPA, Title VII, the ADEA, the CSRA, and the VA WPA.  See ECF No. 1 (Compl.) at 1–3.

Following a mutually agreed-upon stay of proceedings related to the pandemic, the action resumed in June 2021 when Defendants moved for summary judgment.  See ECF No. 20 (Def. MSJ); see also Minute Order of Sept. 29, 2020 (lifting stay).  Spence then sought leave to file an Amended Complaint in July 2021 and proposed a version spanning 234 pages, which added a

sixth count (itself over 139 pages) challenging the MSPB's decision upholding her removal.  See ECF No. 22 (Proposed Am. Compl. 1).  This Court denied Spence's motion without prejudice on the ground that the new Complaint was far too long, and it allowed her to refile, provided her pleading did not exceed 50 pages.  See Minute Order of July 30, 2021; see also Fed. R. Civ. P. 8(a)(2).  On her second go-round in August 2021, Plaintiff reduced her proposed Amended Complaint to a mere 146 pages.  See ECF No. 23 (Proposed Am. Compl. 2).  This Court, unsurprisingly, handed Spence a familiar result: her Motion to Amend was denied, and she was reminded of the 50-page limit.  See Minute Order of Sept. 2, 2021.  One month later, Plaintiff proposed what appeared at first glance to be a 50-page Amended Complaint, see ECF No. 24 (Proposed Am. Compl. 3), which this Court initially accepted.

The VA, however, moved to dismiss, noting that Plaintiff had still violated this Court's orders.  See ECF No. 30 (Def. MTD Am. Compl. 1) at 4.  As it turned out, although the Complaint itself was 50 pages, it incorporated by reference a 57-page "Statement of Facts," thus rendering her Third Proposed Amended Complaint 107 pages in length.  Id.  Recognizing this as no more than a "creative method of circumventing page limits," this Court expressed its frustration with "Plaintiff's flagrant disregard for the limits the Court ha[d] imposed" and once again sent her back to square one, dismissing the First Amended Complaint.  See ECF No. 33 (Order Dismissing Am. Compl. 1) at 2.  Again indulging her *pro se* status, the Court chose to dismiss the Complaint without prejudice, giving Plaintiff "one more opportunity" to amend.  Id. at 1.  In doing so, however, the Court warned her that it would "behoove [her] to be as concise as possible on her fourth attempt" and cautioned that this opportunity to amend — her fourth in eight months — would be "her final one."  Id. at 2.

Two weeks later, Spence at last proposed a 50-page Second Amended Complaint, <u>see</u> ECF No. 34 (Proposed Am. Compl. 4), which contained all the claims from her prior pleadings, but removed references to the 57-page "Statement of Facts." The Court accepted this Second Amended Complaint, which is the operative one here. <u>See</u> Minute Order of Apr. 14, 2022. This pleading alleges six counts: discrimination on the basis of race, sex, and age in violation of Title VII, the ADEA, and the WPA, and retaliation for protected EEO and whistleblowing activity in violation of the same (Count I); reprisal for whistleblowing activity in violation of the WPA (Count II); hostile work environment on the basis of race, sex, and age in violation of Title VII, the ADEA, and the WPA (Count III); harmful procedural error in Spence's firing in violation of the VA WPA (Count V); and an appeal of the MSPB decision upholding her firing as arbitrary and capricious (Count VI). The VA now moves to dismiss or, in the alternative, for summary judgment. <u>See</u> ECF No. 37 (Def. MTD).

## II.    Legal Standard

Defendants first argue that this Court should dismiss Plaintiff's WPA claims for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). A plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear her claims. <u>See</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>U.S. Ecology, Inc. v. U.S. Dep't of Interior</u>, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." <u>Grand Lodge of the Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." <u>Id.</u> at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1350 (2d ed. 1987)). Additionally, unlike with a

motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992).

The VA next asserts that it is entitled to summary judgment on Plaintiff's claim of harmful procedural error in violation of the WPA and its counterpart, the 2017 VA WPA. Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998).  On a motion for summary

judgment, the Court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007).

The nonmoving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The nonmovant is required to provide evidence that would permit a reasonable jury to find in its favor. Laningham v. Navy, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If the nonmovant's evidence is "merely colorable" or "not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249–50 (citation omitted).

Plaintiff's claim of harmful procedural error, which was decided by the MSPB, must be analyzed under the standard for Administrative Procedure Act suits. The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

For all the remaining claims, the VA asks this Court to dismiss for failure "to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6)

motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A plaintiff must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Given Spence's *pro se* status, the Court must construe her Second Amended Complaint especially liberally.  See Turner v. Corr. Corp. of Am., 56 F. Supp. 3d 32, 35 (D.D.C. 2014).  In evaluating the sufficiency of a plaintiff's complaint under Rule 12(b)(6), a court may ordinarily consider only "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).  For *pro se* plaintiffs, a court may also consider the facts set forth in the plaintiff's opposition to the motion to dismiss.  See Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015).

It is important to note, however, that Spence is no ordinary *pro se* plaintiff.  Rather, she has been an attorney for 36 years and has spent over a decade working as a senior attorney at the VA.  See SAC, ¶¶ 4, 7.  Given this status, the Court does not believe that Brown's ruling should apply to her.  Cf. Dozier v. Ford Motor Co., 702 F.2d 1189, 1194–95 (D.C. Cir. 1983) (noting

8

that although "a pro se litigant must of course be given fair and equal treatment," an attorney who "has practiced law for some 31 years" is a "particularly poor candidate for special treatment" as a *pro se* litigant).  In addition, despite her experience and repeated admonishments from this Court, Spence showed a "flagrant disregard for the limits the Court . . .  imposed" on her pleadings.  See Order Dismissing 1st Am. Compl. at 2.  Now, in her latest filings, she once again attempts to incorporate 129 pages of external documents to supply the factual information necessary to support her allegations, bringing her Opposition and its attachments up to a total of 173 pages in length, which would violate the 45-page limit on briefs.  See ECF No. 39 (Pl. Opp.) & Exhs. A–H; LCvR 7(e).  Spence's repeated attempts to bypass this Court's orders and her inability to plead the necessary facts to support her allegations within the four corners of her Second Amended Complaint — even on her fifth attempt — do not merit this Court's further leniency.  As a result, the Court will construe the allegations in her Second Amended Complaint liberally, as it must, but it will limit itself to only those allegations, refusing to consider the external materials she once again attempts to incorporate in her Opposition.

## III.  Analysis

As a threshold matter, the VA contends that Spence's hostile-work-environment and unlawful-employment-preference claims under the WPA (Counts III and IV) should be dismissed for her failure to exhaust administrative remedies.  It next asserts that, regardless of jurisdiction, all counts should be dismissed on the merits for failure to state a claim.  The Court initially addresses the jurisdictional question; finding against Defendants, it proceeds to analyze the merits of each of the six counts separately.

A.  Exhaustion of WPA Claims

"The WPA provides most federal agency employees with protection against agency reprisals for whistleblowing activity, such as disclosing illegal conduct."  Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002) (citing 5 U.S.C. § 2302(b)(8)).  For an employee to avail herself of those protections, however, she must first exhaust certain administrative procedures. Specifically, an employee who alleges that she was the victim of a "prohibited personnel action," including reprisal for whistleblowing, "must first bring her claim" to the Office of Special Counsel.  Id. (citing 5 U.S.C. § 1214); see also Weber v. United States, 209 F.3d 756, 758 (D.C. Cir. 2000) (describing whistleblower-protection procedures under Title 5).  The OSC will investigate the complaint, and if it finds any such prohibited personnel action, will report its findings to the MSPB.  Stella, 284 F.3d at 141.  If the OSC finds no agency wrongdoing, then the employee herself may bring an action before the MSPB.  Id. (citing 5 U.S.C. §§ 1214(a)(3); 1221; 2302(b)(8)).  If an employee is dissatisfied with the MSPB's subsequent ruling, only then may she seek judicial review.  Id. § 7703(a)(1), (b)(1).  These steps constitute the required exhaustion of administrative remedies, which "is a jurisdictional prerequisite to suit."  Weaver v. U.S. Info. Agency, 87 F.3d 1429, 1433 (D.C. Cir. 1996); see also Gardner v. United States, 213 F.3d 735, 737 n.1 (D.C. Cir. 2000) ("The district court lacked subject matter jurisdiction of [the] claims . . . because [the plaintiff] failed to allege that he had exhausted his administrative remedies, as required under the [CSRA].").

The VA is correct that Spence failed to plead facts in her Second Amended Complaint establishing that she did raise these claims during her MSPB proceedings.  In her Opposition to Defendants' Motion, however, Plaintiff points to documents in the administrative record that prove that she raised these claims in her administrative appeal.  See Pl. Opp. at 7–9 & Exh. A

(MSPB Appellant Statement of Affirm. Defs.) at 1–2, 12.  Because the Court has an independent

obligation to assure itself of its own jurisdiction, it "may consider materials outside the pleadings

in deciding whether to grant a motion to dismiss" under Rule 12(b)(1).  Jerome Stevens Pharm.,

Inc., 402 F.3d at 1253.  Having done so, the Court finds that she properly raised and exhausted

these claims.

     B.   Count I: Discrimination and Retaliation Based on Race, Sex, and Age

     In her first count, Spence mashes together multiple claims of discrimination based on

race, sex, and age in violation of Title VII, the ADEA, and the WPA, as well as retaliation for

protected EEO and whistleblowing activity in violation of the same statutes.  The VA argues that

this entire cause of action must be dismissed because she has pled no facts plausibly suggesting

that she was mistreated because of her membership in a protected class or for making protected

disclosures.  See Def. MTD at 5–12.  Because Spence offers no more than conclusory allegations

to support her claims, the Court agrees.

     Title VII makes it unlawful for an employer to "discriminate against any individual with

respect to [her] compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Similarly,

the section of the ADEA governing federal agencies states that "[a]ll personnel actions affecting

employees or applicants for employment who are at least 40 years of age . . . shall be made free

from any discrimination based on age."  29 U.S.C. § 633a(a).  The WPA, in turn, simply

incorporates Title VII and the ADEA's prohibitions on discrimination based on a protected trait.

See 5 U.S.C. § 2302(b)(1)(A), (B).  All three statutes also forbid retaliation against employees

who engage in protected activity, such as filing an EEO complaint or making a protected

disclosure.  See Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008); Hessami v. Merit Sys. Prot. Bd., 979 F.3d 1362, 1367 (Fed. Cir. 2020).

Spence contends that the reason for her perceived mistreatment and ultimate termination was that she is a Black woman over the age of 40.  See SAC, ¶ 11.  Although her Second Amended Complaint does not clearly specify which of the employment actions she identifies were discriminatory and which were retaliatory, the Court follows the same three-part burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973), in weighing both discrimination and retaliation claims under either Title VII or the ADEA.  See Stoe v. Barr, 960 F.3d 627, 639 (D.C. Cir. 2020) (applying framework to Title VII claims); Ford v. Mabus, 629 F.3d 198, 201 (D.C. Cir. 2010) (applying framework to ADEA claims).  Under that familiar framework, "an employee must first make out a *prima facie* case of retaliation or discrimination."  Morris v. McCarthy, 825 F.3d 658, 668 (D.C. Cir. 2016).  To clear that hurdle, she need only show that "(1) she is a member of a protected class" or, in the retaliation context, that she "engaged in statutorily protected activity"; "(2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination" or, in the case of retaliation, "that a causal link connects the [protected activity and the adverse action]."  Czekalski, 475 F.3d at 364 (internal quotation marks and citation omitted); Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009).  At the pleading stage, a plaintiff must plead "which retaliatory acts were directed at [her] and when."  Poole v. U.S. Gov't Publ'g Off., 219 F. Supp. 3d 80, 84 (D.D.C. 2016).

The Court can dispense with Spence's discrimination claims quickly, as her allegations have an obvious shortcoming: she provides no facts that could possibly give rise to an inference that any actions that the VA took against her were due to intentional race, sex, or age

discrimination.  In her entire 50-page Complaint, Plaintiff mentions these characteristics exactly twice — once on the second page where she establishes herself as a "Black . . . female . . . over 40" before proceeding to provide a catalog of alleged wrongs she suffered, and once on page five when she again states that she is "a Black female over 40."  SAC, ¶¶ 11, 34.  Nowhere in the Complaint, however, does Spence allege in more than conclusory terms any facts that support an inference that the employment actions she experienced had anything to do with her race, sex, or age.  Such omissions, particularly on her fifth attempt, are fatal to her discrimination claim.  See Ass'n of Flight Attendants v. U.S. Dep't of Transp., 564 F.3d 462, 465 (D.C. Cir. 2009) (plaintiff's claim of discrimination failed because it contained no more than conclusory allegations of discrimination); McCaskill v. Gallaudet Univ., 36 F. Supp. 3d 145, 152-53 (D.D.C. 2014).

Moving along, Spence also alleges retaliation based on protected activity under Title VII and the ADEA, and separately alleges retaliation under the WPA for protected disclosures she claims to have made between 2017 and 2018.  The VA contends that these claims should be dismissed because: (1) many of the actions that Plaintiff complains about were not materially adverse; and (2) in any event, she has not established a causal connection between those actions and any protected activity.  The Court concurs.

"'Adverse actions' in the retaliation context" — referred to most frequently as materially adverse actions — "encompass a broader sweep of actions than those in a pure discrimination claim."  Baloch, 550 F.3d at 1198 n.4.  A retaliatory act is "materially adverse" if, objectively speaking, it "would have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 1198 & 1199 n.5 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).  At the same time, however, Title VII and the ADEA's "antiretaliation

provision[s] protect[ ] an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington, 548 U.S. at 67 (interpreting Title VII's antiretaliation language); see Baloch, 550 F.3d at 1198 & n.4 (applying Burlington in context of ADEA retaliation).  In that regard, "[a]n employee's decision to report discriminatory behavior cannot immunize [her] from those petty slights or minor annoyances that often take place at work and that all employees experience." Burlington, 548 U.S. at 68.

There is no dispute that Spence engaged in protected activity under Title VII and the ADEA by filing an EEO complaint with the VA on November 6, 2017.  The problem, however, is that many of the employment actions that followed are not materially adverse at all.  Plaintiff complains, for example, that her supervisor required that she email her daily to report when her workday began and refused to approve a requested change to shift her working hours.  See SAC, ¶¶ 12, 18.  An employer's "[m]onitoring [of] an employee's . . . time and attendance," however, "is a basic employment practice, and as such could only be an adverse employment action if [plaintiff] previously had immunity from general employment policies." Simms v. Navy Fed. Credit Union, No. 02-900, 2002 WL 32971969, at *5 (E.D.V.A. Aug. 27, 2002).  In other words, closely monitoring an employee's attendance does not "produce[ ] an injury or harm," Burlington, 548 U.S. at 67, as employers may reasonably require consistent, complete attendance and take reasonable steps to ensure an employee is not falling short.  See Wade v. District of Columbia, 780 F. Supp. 2d 1, 16 (D.D.C. 2011) (Plaintiff's claim — "that his supervisors were overly aggressive in tracking his whereabouts to ensure that he was not avoiding his duties — involves a common aspect of the working environment, and [plaintiff] has not explained how this caused him any harm."); cf. Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998) (courts must take care to avoid "expanding" the antidiscrimination statutes "into a general

14

civility code"). In addition, requiring an employee to work hours that accommodate her colleagues' and clients' work schedules is not unreasonable. See McNair v. District of Columbia, 359 F. Supp. 3d 1, 10 (D.D.C. 2019) ("Courts in this Circuit consistently have held that denial of an alternate work schedule, by itself, is not an adverse action.") (citing Hunter v. District of Columbia, 905 F. Supp. 2d 364, 373 (D.D.C. 2012); and Williams v. Donovan, 219 F. Supp. 3d 167, 175–76 (D.D.C. 2016)).

Similarly, the myriad other employment actions about which Spence complains — i.e., written counseling letters, letters of admonishment, proposed suspensions, negative performance reviews, belated approval of her leave requests, and her exclusion from meetings, none of which had any binding effect on her salary, bonus, or other benefits, see SAC, ¶¶ 13–19, 20–25 — do not qualify as materially adverse. Baloch, 550 F.3d at 1199 (noting that "performance reviews typically constitute adverse actions only when attached to financial harms" and holding review did not qualify as adverse action in retaliation context even when accompanied by other letters of reprimand and counseling); Weber v. Battista, 494 F.3d 179, 185 (D.C. Cir. 2007) (holding performance evaluation to be materially adverse where it resulted in employee's not receiving a cash award); Webster v. Spencer, No. 17-1472, 2020 WL 2104231, at *9 (D.D.C. May 1, 2020) (noting that "initial denial" of a request for leave that is later granted is "plainly not an adverse action either for discrimination purposes or retaliation purposes"). The only action that is plainly adverse is her termination.

Even claims regarding her termination flounder because Spence has not adequately pled a causal connection between that action and her EEO complaint. She was fired nearly a full year after she filed her EEO complaint. Id., ¶¶ 10, 27. "To establish a causal connection between the protected activity and the termination — in the absence of direct evidence — a plaintiff may

show 'that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity.'" Keys v. Donovan, 37 F. Supp. 3d 368, 372 (D.D.C. 2014) (quoting Mitchell v. Baldrige, 759 F.2d 80, 86 (D.C. Cir. 1985)). The Supreme Court has cautioned, however, that "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (quoting O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001)) (emphasis added); see also Singletary v. District of Columbia, 351 F.3d 519, 525 (D.C. Cir. 2003) ("[T]his circuit has held that a close temporal relationship may alone establish the required causal connection.").

"Although 'neither the Supreme Court nor the [D.C. Circuit] has established a bright-line three-month rule,' this Circuit has generally found that such a gap between the protected activity and the adverse employment action negates the temporal proximity needed to prove causation." Keys, 37 F. Supp. 3d at 373 (quoting Hamilton v. Geithner, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012)); see also Clark County Sch. Dist., 532 U.S. at 273–74 (citing with approval cases rejecting proximity of three and four months as evidence of causation). Because the nearly one-year interval between Spence's last allegedly protected activity (her EEO complaint) and her termination well exceeds that three-to-four-month gap that courts in this Circuit have routinely found "too great to establish an inference of causation," dismissal is warranted. See Mokhtar v. Kerry, 83 F. Supp. 3d 49, 81 (D.D.C. 2015), aff'd, No. 15-5137, 2015 WL 9309960 (D.C. Cir. Dec. 4, 2015); see also Keys, 37 F. Supp. 3d at 373.

Finally, Spence raises a separate WPA retaliation claim for disclosures she made between 2017 and 2018 to the VA OGC, IG, and OSC.  The disclosures covered a broad range of grievances, including the alleged hostile work environment that she experienced, her view that the PLG had inappropriately hired new attorneys at a higher salary level, and her allegation that certain applicants for these new positions were granted unlawful preference in the application process.  See SAC, ¶¶ 11, 30, 34, 39.  This claim meets the same fate as her previous retaliation ones.  To state a WPA-reprisal claim, a plaintiff must allege that (1) she made a "protected disclosure" and (2) "the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action."  Hessami, 979 F.3d at 1367.

Spence neglects, however, to specify the dates on which she made these alleged whistleblower disclosures, offering only that they arose "in complaints in 2017 and 2018."  SAC, ¶ 10.  Without knowing the precise dates of her complaints, and because Spence pleads no other facts that would provide direct evidence of retaliation, this Court cannot possibly make "an inference of causation" necessary to sustain her claim.  See Harris v. D.C. Water & Sewer Auth., 791 F.3d 65, 69 (D.C. Cir. 2015).

### C.  Count II: Retaliation for VA Hiring Complaint

In a stand-alone count, Plaintiff repeats one of her above WPA claims, citing again certain disclosures she made to the VA OGC, IG, and OSC between 2017 and 2018 regarding the hiring of additional attorneys at the GS-15 level.  This count also realleges the same purportedly adverse employment actions as those she identified in Count I — namely, "counseling," "admonishment," her performance "rating," and her "proposed suspension," SAC, ¶ 31 — which this Court already explained were not materially adverse at all.  That leaves her termination. Once again, she never alleges when she made the relevant disclosures and offers no other facts

that would support a plausible inference that those disclosures had anything to do with her termination.  As a result, Count II must yield.

D.  Count III: Hostile Work Environment

The Court next takes up Spence's claim of a hostile work environment under Title VII, the ADEA, and the WPA.  "The bar for demonstrating a hostile work environment is a high one: '[A] plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Achagzai v. Broad. Bd. of Governors, 170 F. Supp. 3d 164, 183 (D.D.C. 2016) (quoting Baloch, 550 F.3d at 1191, 1201); see also Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013).  In evaluating a hostile-environment claim, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  Baloch, 550 F.3d at 1201 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)) (Title VII and ADEA); see also Sistek v. Dep't of Veterans Affairs, 955 F.3d 948, 955 (Fed. Cir. 2020) (hostile-work-environment claims are actionable as significant changes in working conditions under WPA).  By adhering to these standards, the Court thereby "ensure[s] that [employment-discrimination law] does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace."  Faragher, 524 U.S. at 788 (citations and internal quotation marks omitted).  While a plaintiff need not prove a hostile work environment at this stage, she still must allege "extreme" conduct that satisfies the "demanding" standard for such a claim.  Id.

Even as amended multiple times, Spence's Complaint fails to allege any behavior "so objectively offensive as to alter the conditions of [her] employment."  Oncale, 523 U.S. at 81

(internal quotation marks omitted).  Rather than pointing to "discriminatory intimidation, ridicule, and insult," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation omitted), she lists a series of "work-related actions by supervisors," which "courts typically do not find . . . to be sufficient for a hostile work environment claim."  Munro v. LaHood, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (citation omitted); see also Bell v. Gonzales, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment.").  For example, she alleges that her supervisors placed unreasonable demands on her to increase work pressure, reassigned work from other attorneys to her, generally undermined her decisionmaking, and issued negative performance evaluations and disciplinary actions that caused her stress and interfered with her work.  See SAC, ¶ 34.

The VA is correct that these complaints do not, as a matter of law, rise to the level of conduct that is "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment."  Harris, 510 U.S. at 21; see, e.g., Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile-work-environment claim where "disparaging remarks, criticisms of [plaintiff's] work, and other negative comments d[id] not sufficiently demonstrate a significant level of offensiveness"); id. ("Nor can the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context.") (citations omitted).

On top of that, Spence manages to provide only a conclusory allegation that these actions had anything to do with her membership in a protected class, her protected EEO complaint, or her other alleged whistleblowing activity.  Rather, she merely tacks onto her catalog of

workplace slights the allegation that these actions came "after [Spence], a Black female over 40, engaged in EEO/whistleblower activity."  SAC, ¶ 34.  As a result, her hostile-environment count falls by the board.

E.  Count IV: Unlawful Employment Preference

Spence's next cause of action focuses on the substance of the grievance that led her to make the whistleblower disclosures that she alleges gave rise to the retaliation and hostile work environment addressed in the previous three counts.  She alleges that the VA's advertisement of a new attorney position within the PLG at the GS-15 level constituted a "prohibited personnel practice" under the merit-system principles of the WPA because it obstructed her ability to compete for employment and granted an employment preference not authorized by law.  See 5 U.S.C. § 2302(b)(4), (6).  In a single sentence, Spence states that the VA "deceived [her] with respect to her right to compete for employment when Army attorneys were hired at the GS-15 level to perform the same work as appellant under a [job posting] intended for VA attorneys which resulted in the attorneys being granted preferences or advantages not authorized by law, rule or regulation to improve their prospect of employment."  SAC, ¶ 39.  Essentially, her claim appears to be that the VA hired unqualified Army attorneys for a position that was meant only for VA attorneys.  See Pl. Opp. at 33.  Although she never mentions discrimination in this decision, the Court infers that she may have meant to argue that these decisions were infected with the same discriminatory motives she alleges throughout her Complaint.

But Spence does not plead any facts that support these conclusory allegations of wrongdoing.  She does not, for example, allege that the VA gave the Army applicants for these positions favorable treatment in the process, nor does she substantiate her allegation that the job posting was deceptive about her ability to compete.  Without more, her "[t]hreadbare recital[] of

the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice"
to state a claim for relief.  Iqbal, 556 U.S. at 678.

    F.   Count V: Harmful Procedural Error

      Spence's fifth count alleges that the VA violated the procedures of VA WPA by firing
her without first obtaining the approval of the VA OSC.  See SAC, ¶¶ 42–43.  Unlike the other
counts, the Court evaluates this one under a summary-judgment standard given that it considers
materials outside of the four corners of Plaintiff's Complaint.

      The VA WPA requires that in cases where an employee "seek[s] corrective action . . .
from the Office of Special Counsel based on an alleged prohibited personnel practice" under the
Whistleblower Protection Act, the VA "may not remove, demote, or suspend such covered
individual . . . without the approval of the Special Counsel."  38 U.S.C. § 714(e)(1).

      Spence challenges the MSPB's conclusion that the VA Special Counsel signed off on her
termination as unsupported by evidence in the administrative record.  Challenges to MSPB
decisions are ordinarily heard in the Court of Appeals for the Federal Circuit, see 5 U.S.C.
§ 7703(b)(1), but "mixed cases" involving a challenged employment action that is also alleged to
have been discriminatory or retaliatory under Title VII may instead be appealed to federal district
court.  See Williams v. Dept. of the Army, 715 F.2d 1485, 1489–91 (Fed. Cir. 1983); 5 U.S.C.
§§ 7702, 7703(b)(2) & (c).  In a "mixed case," the Court looks only to whether the MSPB's
decision was "arbitrary or capricious, obtained without compliance with lawful procedures,
unsupported by substantial evidence[,] or otherwise not in accordance with law."  Barnes v.
Small, 840 F.2d 972, 979 (D.C. Cir. 1988) (citing 5 U.S.C. § 7703(c)).

      Having examined that decision, the Court concludes that it was based on substantial
evidence.  The administrative record before the MSPB included emails from the VA Office of

Accountability and Whistleblower Protection relaying status updates on OSC's inquiry into Spence's proposed removal.  <u>See</u> ECF No. 20-11 (MSPB Appeal File) at 13–18.  In upholding the VA's removal of Spence, the MSPB found that the VA OAWP "issued an email notifying the agency that its inquiry into the appellant's proposed removal is complete and neither they nor the Office of Special Counsel will hold the proposal from proceeding."  ECF No. 20-25 (MSPB Decision) at 23–24.  This is correct inasmuch as in an October 24, 2018, email, the OAWP official explained that the OSC inquiry involving Spence's proposed removal was complete and that neither OSC nor OAWP would "continue to hold the action proposed under [38 U.S.C. § 714(e)(1)]."  MSPB Appeal File at 13.  Spence was fired the following day.  <u>See</u> MSPB Decision at 24.  As substantial evidence supports the MSPB's decision that this was done in accordance with the VA's procedures, this count goes nowhere, and the Court will award summary judgment to Defendants on it.

  G. <u>Count VI: MSPB Appeal</u>

   Last up is Count VI, which broadly critiques the entirety of the MSPB decision as arbitrary, capricious, and unsupported by the administrative record.  The VA's principal position on dismissal here is that this cause of action does not comply with Rule 8(a)(2)'s requirement that a pleading be "a short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court has already recounted, this is not the first time that Defendants have asked for Spence's pleadings to be dismissed for their prolixity and confusion.  <u>See</u> Def. MTD Am. Compl. 1 at 8–9.  Her original Complaint was hardly barebones, coming in at 98 pages.  <u>See</u> Compl.  She then attempted to amend her Complaint three times, proposing modified versions that ranged between 107 and 234 pages in length.  Each time, this Court denied her permission to file such lengthy Complaints and, most recently, warned that she had just "one more

opportunity" to amend to file an appropriate Complaint.  <u>See</u> Order Dismissing 1st Am. Compl. at 1.

Although Plaintiff's Second Amended Complaint as a whole no longer boasts hundreds of pages, Count VI remains far too unwieldy to proceed.  Under Rule 8(d)(1), "[e]ach allegation must be simple, concise, and direct."  Yet, Count VI spans a total of 167 numbered paragraphs, comprising 41 pages of a 48-page Complaint.  <u>See</u> SAC at 7–48.  Courts have often dismissed complaints that contain bloated and disorganized allegations such as this for violations of Rule 8.  <u>See</u> <u>Unfoldment, Inc. v. District of Columbia</u>, No. 07-1717, 2007 WL 3125236, at *1–2 (D.D.C. Oct. 24, 2007) (dismissing 61-page complaint); <u>Ciralsky v. CIA</u>, 355 F.3d 661, 668–671 (D.C. Cir. 2004) (affirming dismissal without prejudice of 61-page complaint and striking of 119-page complaint); <u>Nichols v. Holder</u>, 828 F. Supp. 2d 250, 253–54 (D.D.C. 2011) (dismissing 140-page complaint because it was "prolix, redundant, [and] bloated with unnecessary detail," falling far short of Rule 8(d)'s requirement that each allegation be "simple, concise, and direct"); <u>Brown v. Califano</u>, 75 F.R.D. 497, 499 (D.D.C. 1977) (collecting cases).

It is not merely the length of this count that warrants dismissal for violating Rule 8; the disorganized and convoluted nature of the allegations counsel that result as well.  The purpose of Rule 8 "is to give fair notice of the claims being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  <u>Brown</u>, 75 F.R.D. at 498 (citations omitted); <u>Nichols</u>, 828 F. Supp. 2d at 252 ("'[U]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'") (quoting <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted)).  For this reason, the federal pleading rules emphasize clarity and brevity.

See Ciralsky, 355 F.3d at 669.

Here, Count VI requires great perspicacity to construe.  Spence dives into block quotes from the MSPB decision or administrative record, then comes up for air to argue that the quoted portions of the MSPB decision are erroneous.  See, e.g., SAC, ¶¶ 48–53.  The allegations linger on the minutiae of "myriad seemingly irrelevant descriptions," Jiggetts v. District of Columbia, 319 F.R.D. 408, 415 (D.D.C. 2017), of correspondence between Spence and her supervisors about particular work assignments, see, e.g., SAC, ¶¶ 56–64, rather than providing a coherent chronological retelling of the events underlying her termination, making it "nearly impossible to discern the essential facts that underlie Plaintiffs' legal claims." Jiggetts, 319 F.R.D. at 415 (emphasis omitted).

Although Spence is representing herself, *pro se* litigants must still comply with the Federal Rules of Civil Procedure.  Jarrell v. Tisch, 656 F. Supp. 237, 239 (D.D.C. 1987). Additionally, her continued inability to submit a Complaint that abides by Rule 8's "short and plain statement" requirement is made worse by the fact that she is no ordinary *pro se* litigant; on the contrary, her Complaint "was crafted and signed by [a] lawyer[]," Unfoldment, Inc., 2007 WL 3125236, at *2, who has practiced for 36 years.  See SAC, ¶ 4.  Given that this is her fifth attempt to articulate a sufficient claim, the Court is constrained to conclude that she has exhausted her opportunities, and dismissal is appropriate.

### H.  Dismissal with Prejudice

The last decision the Court faces is whether to grant Defendants' request that dismissal be with prejudice.  As the D.C. Circuit has warned, dismissals with prejudice under Rule 12(b)(6) are disfavored and "warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Firestone v.

Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted); see also Ciralsky, 355 F.3d at 670 ("[I]t will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8.") (quoting Salahuddin, 861 F.2d at 42).  As the Court has repeatedly noted in this Opinion, however, it has given Plaintiff repeated warnings and myriad opportunities to articulate a proper claim; indeed, her latest Complaint represents her fifth attempt.  As a licensed attorney for over 30 years, Spence is expected to be capable of following the Court's direction and stating a proper cause of action that "give[s] the defendants fair notice of the claims against them."  Ciralsky, 355 F.3d at 670; cf. Dozier, 702 F.2d at 1194–95.

At some point, plaintiffs should not be permitted to impose further on their adversaries and the court system, both of which have finite resources.  The VA clearly spent an inordinate amount of time attempting to manage an unsatisfactory employee here, and her prolonged efforts to sue it have only compounded that expenditure.  The Court believes that the road should end here, and it will thus dismiss the case with prejudice.

IV.    **Conclusion**

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss with prejudice as to Counts I, II, III, IV, and VI, and it will grant summary judgment for Defendants on Count V.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  August 12, 2022